## 10723

### WILSON v. WILSON

#### (109 S. E. 278)

1. APPEAL AND ERROR—DECREE OF COURT FOLLOWING FINDING OF MASTER AFFIRMED, UNLESS CONTRARY TO WEIGHT OF TESTIMONY.— Where master in chancery and trial Judge concurred in their findings of fact, decree appealed from must be affirmed, unless the appellant can convince this Court that their findings are against the weight of the testimony.

2. DEEDS—NO PRESUMPTION OF FRAUD IN CONVEYANCE FROM PARENT TO CHILD.—The mere fact that a parent deeds property to a child raises no presumption of undue influence, overreaching, wrong, or fraud, such as to shift the burden to the child to show that there was none.

3. DEEDS—PARTY ATTACKING DEED HAS BURDEN OF OVERCOMING PRE-SUMPTION OF ITS VALIDITY.—A deed properly executed is presumed to be what it purports to be, and one assailing it has the burden of rebutting this presumption.

4. CONTRACTS—WHERE FIDUCIARY RELATION EXISTS BETWEEN PARTIES TO TRANSACTION, THE BURDEN OF SHOWING GOOD FAITH RESTS WITH THE SUPERIOR PARTY.—Where there is a fiduciary relation between parties, and a business transaction occurs between them, and the superior party obtains the advantage or a possible benefit, a presumption arises against the validity of the transaction, and puts the burden of proving good faith on the superior party.

5. CONTRACTS—SECURED BY OVERPOWERING WILL OF PARTIES WILL NOT BE UPHELD.—Where person has a weak understanding, if the proof is of such weakness as incapacitates or borders dangerously near incapacity, if the nature of the contract warrants the conclusion that it was not the exercise of deliberate judgment, but that the judgment of another has been imposed in the place of his judgment by cunning, artifice, overpersuasion, and undue influence, the con-tract will not be upheld.

6. DEEDS—EVIDENCE HELD INSUFFICIENT TO SHOW UNDUE INFLUENCE. —In an action to set aside a deed evidence *held* insufficient to show fraud, undue influence, or overpersuasion in securing its execution.

Before MOORE, J. Spartanburg, May, 1920. Reversed.

Action by Berry Wilson, father, against R. G. Wilson, son, to set aside a deed. Decree for plaintiff and defendant appeals.

The Report of S. T. Lanham, Master, was as follows:

The plaintiff and the defendant are father and son. The plaintiff is an old man, eighty-two years of age, blind in one eye, partially deaf. He is the father of eight children, the defendant being his oldest son. He has reared all of these children to manhood's estate, and all are living apart from him except the youngest son, who still lives with his father.

The plaintiff owns a 151-acre tract of land in the Holly Springs section of Spartanburg County, which has been his home nearly all his life. It is encumbered by a mortgage to the D. D. Davenport estate, on which there is due a balance of approximately $3,000.00.

On August 5, 1919, Berry Wilson conveyed to his son, R. G. Wilson, the 151-acre tract of land, for an agreed consideration of $12,000.00, reserving the possession of the land during his life, and agreeing to pay all taxes during such possession.

On the same day Robert G. Wilson signed a note whereby he promised to pay to his father the sum of $12,000.00 within twelve years from date, no interest to accrue thereon until after the death of the payee. One Hundred Dollars paid in cash was credited on this note.

The defendant was to assume the payment of the Davenport mortgage, and in order to meet this payment he was to mortgage the land which he had bargained for, borrowing the money upon this security with which to pay Davenport. He was to execute a second mortgage to Berry Wilson by January 5, 1920, which would represent the remainder of the purchase price.

This suit was commenced August 23, 1919, by the service of summons and complaint. The plaintiff alleges that he was induced by circumvention, overpersuasion, undue influence and fraudulent misrepresentations on the part of the defendant to execute the deed of conveyance; that in

his enfeebled condition he was no match for his son, who induced him in the manner already stated to part with his home for an inadequate consideration. He asks that the deed be cancelled and adjudged to be void and of no effect.

The defendant admits the conveyance, but denies the use of any artifice, or the commission of any fraud; he alleges that the plaintiff has been well paid for the land, or will be, that the transaction was fair and open and known to most of the plaintiff's close relatives; he asks that the complaint be dismissed with costs.

The law applicable to the issues raised by the pleadings was so well understood and so ably argued by counsel that it is unnecessary for me to analyze or discuss the authorities at length. I shall refer very briefly to the principles involved.

It is a well settled principle of law that mental incapacity need not be so complete as to dethrone reason in order to render it impossible for one to make a contract, or a valid gift; such unsoundness or weakness of mind as makes grantor unable to understand the subject of the contract and its nature and consequences is enough. *Du Bose v. Kell,* 90 S. C. 207; *Hagin v. Barrow,* 103 S. C. 453.

The doctrine is equally well established that the acts and contracts of persons of weak understanding will be held void in Courts of Chancery if the nature of the act or contract warrants the conclusion that the person in question has not exercised a deliberate judgment, but has been imposed upon by artifice and cunning, or overpersuaded by undue influence. *Banker v. Hendricks,* 24, S. C. 1· *Gaston v. Bennett,* 30 S. C. 467; *Willie v. Willie,* 57 S. C. 413.

A third group of decisions may be found to sustain the doctrine that wherever a fiduciary relation exists between two persons, and a business transaction occurs between them, as a result of which the superior party obtains a

possible benefit, equity raises a presumption against its validity, throwing the burden upon him to prove his good faith. *Way v. Insurance Company,* 61 S. C. 511; *Tindall v. Sublett,* 82 S. C. 199; *McElveen v. King,* 88 S. C. 346; *Delvin v. Delvin,* 89 S. C. 273.

In *Butler v. Haskell,* 4 S. C. Eq. 652, the relation was that of principal and agent; in *Way v. Insurance Company* and in *McElveen v. King* it was that of husband and wife; in *Tindall v. Sublett* it was mother-in-law and son-in-law; in *Craddock v. Weekly,* 85 S. C. 329, it was that of a widowed mother and her daughters and their husbands; in *Delvin v. Delvin,* 89 S. C. 268, it was that of a sister and her brother; in the case at bar, it is the relation of father and son.

The tract of land is worth from $125 to $150 an acre, according to the testimony of the witnesses. The price which Robert G. Wilson agreed to pay is not so grossly inadequate as to justify a Court in setting the transaction aside on that ground.

The witnesses differ widely when called upon to express opinions as to the mental capacity of Berry Wilson. Of the three physicians produced as expert witnesses, Dr. Jackson thinks that the plaintiff's mind is so weakened by old age and senile decay that he is not capable of attending to business; Dr. Thompson considers him as intelligent and well balanced as the average man of his age; Dr. Brockman considers him childish and in his dotage, would not call him a balanced man, thinks he would be easily influenced or imposed upon. His friends and neighbors differ about as much as the doctors in their opinions as to his mental acumen.

I fully concur in Dr. Brockman's opinion that there is no insanity or dementia in the case of the old man. But his physical handicap is so enormous that it is difficult for him to make good use of such mental powers as he does

possess.  His advanced age and his senile decay are not disputed by any.

The defendant has never denied that he led his father to believe that forclosure of the mortgage on his farm was imminent.  It is reasonable to suppose that this was anything short of misrepresentation, since the defendant cannot be assumed to have had information that foreclosure was contemplated by the Davenport Estate, when as a matter of fact it had no such intention.  I cannot escape the conclusion that the defendant, whose natural obligation and filial duty should have made him his aged father's chief protector and closest adviser, used this sacred and confidential relationship to persuade the old man to make the conveyance to him, urging upon him the possibility of losing his home, and preying upon his imagination by magnifying a danger which must have been a very remote possibility.

In dealing with his father, the defendant should have shown that utmost degree of good faith (*Uberrima Fides*) which equity requires shall be shown in such case.  He has not done this.  A Court of Equity cannot fail to heed the appeal of an aged man who has been led into a transaction of this sort, by that one of all others whom he should have been able to trust, his first-born son.

I recommend that the deed be cancelled by the Clerk of this Court and returned to the plaintiff, upon the plaintiff's paying into the hands of the said Clerk the sum of $100.00 with interest from August 7, 1919, and that the record of said deed (Book 6-B, page 666) be cancelled by the Clerk. Plaintiff should have judgment against the defendant for the costs of this suit, which should be paid by the Clerk out of the money paid into his hands by the plaintiff.

*Mr. J. J. McSwain,* for appellant, cites: *Deed will not be set aside even though grantor is very old where transaction was open and fair*:  85 S. C. 329; 93 S. C. 376; 91

S. C. 196.  *Tender of consideration is too late*:  56 S. C.
508.  *As to capacity of grantor*:  110 S. C. 182; 110 S. C.
407.

*Messrs. Bomar & Osborne,* for respondent, cite:  *Find-
ings of Master, sustained by Circuit Judge, should settle
all questions of fact involved*: 102 S. C. 358.  *Master sus-
tained by* 113 S. C. 390.

October 10, 1921.

The opinion of the Court was delivered by MR. JUSTICE
WATTS.

This is an appeal from a Decree of Judge Moore con-
firming the report of Master Lanham ordering the cancel-
lation of a deed of conveyance of real estate from plain-
tiff to defendant, duly recorded.  The action was for that
purpose, and after issue joined the case was referred to
the Master, who made his report, recommending the same.

The report of the Master should be incorporated in the
report of the case.  Defendant appeals, and by six ex-
ceptions challenges the Judge's conclusions and seeks re-
versal of the same.

1  The Master and Circuit Judge having concurred
in their findings of fact, the Circuit Decree must
be affirmed, unless the appellant can convince this
Court that their findings are against the weight of the tes-
timony.

2  The laity, in part, and some at the bar, seem to
think that when a father conveys to a child there
is a presumption of fraud, wrong, or undue influ-
ence. Such is not the law.  There is no presumption, from
the mere fact the parent deeds property to a child, of un-
due influence, overreaching, wrong, or fraud, that shifts
the burden to the child to show there was none.  The
peculiar circumstances and facts of each case must de-
termine this.

A deed ordinarily, when properly executed, is pre-sumed to be what it purports to be. And the party assailing it is charged with the burden of rebutting this presumption and proving his case. He who avers and charges must ordinarily prove. The burden of proof is on him. Where there is a fiduciary relation between parties, and a business transaction occurs between them, and the superior party obtains the advantage, or a possible benefit, equity will closely scrutinize the transaction and raise a presumption against the validity of the same and throw the burden on him to prove good faith.

Where a person is of weak understanding, if the proof is of such weakness as incapacitates or danger-ously near borders on incapacity, if the nature of the contract warrants the conclusion that it was not the ex-ercise of deliberate judgment, but that the judgment of another has been imposed in the place of his judgment, by cunning, artifice, overpersuasion, and undue influence, the contract will not be upheld. In the case at bar it is not one of principal and agent; it is of father and son.

The son did not live with his father; he lived in another county; he did not start the negotiations which ended in the conveyance; the father did. The family knew what was going on in reference to the matter, including the "in-laws." There was no concealment as to what was going on.

There is no doubt but that the plaintiff is old and had physical infirmities, due to age, but we cannot conclude from his evidence, and that of others, that he was mentally incapacitated to such an extent as not to know what he was doing, and that his solemn deed of conveyance should be set aside; that he should be allowed to get out of what some of his family and his neighbors think to be a bad trade on his part.

The facts of the case were not such as were the facts in *Craddock v. Weekly*, 85 S. C. 329, 67 S. E. 308, and *Devlin v. Devlin*, 89 S. C. 268, 71 S. E. 966, but the principles applicable are those announced by Mr. Justice Hydrick in the last case.

The consideration was a valuable one; the deed was properly executed and delivered; no concealment; a neighbor drew the deed; it was properly witnessed.   There is no preponderating evidence of fraud, undue influence, or overpersuading, such as to overreach the father and substitute the judgment of the son for that of the father; in executing the deed the father exercised his will and judgment, and should not, under the evidence, circumstances, and facts, be allowed to repudiate his solemn act.

The exceptions are sustained and judgment reversed.

MR. CHIEF JUSTICE GARY and MR JUSTICE FRASER concur.

MR. JUSTICE COTHRAN, (dissenting) : I am satisfied that the findings of the Master, who had all the witnesses before him, concurred in by the Circuit Judge upon the facts and the law of the case, are not overborne by the testimony for the defendant, but are supported by the weight of the testimony.